Sharon D. Cousineau
Samwel Cousineau, PC
700 West Evergreen Blvd.
Vancouver, WA 98660
Tel. 360-750-3789
Fax 360-750-3788
sdcousineau@gmail.com
REBECCA PRESTON

**UNITED STATES DISTRICT COURT**
**DISTRICT OF OREGON**
**PORTLAND DIVISION**

| | |
|---|---|
| REBECCA PRESTON, ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> CHW GROUP, INC. d/b/a CHOICE HOME ) <br> WARRANTY, ) <br> ) <br> Defendant. ) | Case No. 3:19-cv-48 |

## PLAINTIFF'S FIRST AMENDED COMPLAINT

Plaintiff, REBECCA PRESTON ("Plaintiff"), by and through her attorneys, alleges the following against Defendant, CHW GROUP, INC. d/b/a Choice Home Warranty ("Defendant"):

### INTRODUCTION

1. Plaintiff's First Amended Complaint is based on the Telephone Consumer Protection Act., 47 U.S.C. § 227, et seq. ("TCPA").

2. In describing the importance of the TCPA, Senator Hollings, the TCPA's sponsor, said "I echo Supreme Court Justice Louis Brandeis, who wrote 100 years ago that 'the right to be left alone is the most comprehensive of rights and the one most valued by civilized man.'" 137 Cong. Rec. 30.821 (1991).

3. As the Seventh Circuit Court of Appeals wrote: "No one can deny the legitimacy of the state's goal: preventing the phone (at home or in one's pocket) from frequently ringing with unwanted calls. Every call uses some of the phone owner's time and mental energy, both of which are precious." *Patriotic Veterans v. Zoeller,* 845 F.3d 303, 305-306 (7th Cir. 2017).

## JURISDICTION AND VENUE

4. This court has jurisdiction under 28 U.S.C. §§ 1331 and 1337.

5. This court has federal question jurisdiction because this case arises out of violations of federal law. 47 U.S.C. § 227(b); *Mims v. Arrow Fin. Servs., LLC*, 132 S. Ct. 740 (2012).

6. Venue and personal jurisdiction in this District are proper because Defendant does or transacts business within this District, and a material portion of the events at issue occurred in this District.

## PARTIES

7. Plaintiff is a natural person residing in Tigard, Washington County, Oregon.

8. Plaintiff is, and at all times mentioned herein, a "person" as defined by 47 U.S.C. § 153(39).

9. Defendant is, and at all times mentioned herein, a "person" as defined by 47 U.S.C. § 153(39).

10. Defendant is a New Jersey business corporation based in the Township of Edison, Middlesex County, State of New Jersey.

11. Defendant acted through its agents, employees, officers, members, directors, heirs, successors, assigns, principals, trustees, sureties, subrogees, representatives, and insurers.

**FACTUAL ALLEGATIONS**

12. Within four (4) years of Plaintiff filing this Complaint, in or around January 2016 through January 2017, Plaintiff subscribed to a home warranty through Defendant.

13. Within four (4) years of Plaintiff filing this Complaint, in or around December 2016, Defendant began placing calls to Plaintiff on Plaintiff's cellular telephone at xxx-xxx-6034, which included or introduced an advertisement or constituted telemarketing.

14. Within four (4) years of Plaintiff filing this Complaint, in or around December 2016. Defendant called Plaintiff's cellular telephone from several telephone numbers, including, 732-379-5309 and 732-638-2688, which are two of Defendant's telephone numbers.

15. Defendant placed telephone calls to Plaintiff for the purpose of encouraging the renewal of Defendant's home warranty services.

16. On several occasions since Defendant began calling Plaintiff, Plaintiff answered Defendant's call, Plaintiff was met with an extended pause and was eventually connected to a live agent of Defendant.

17. In speaking with Defendant's agents, Defendant's agents disclosed the call was from Choice Home Warranty.

18. On several occasions since Defendant began calling Plaintiff, specifically, in or around January 2017, Plaintiff spoke with one of Defendant's agents and requested for the calls to stop.

19. Despite Plaintiff's repeated request for Defendant to stop calling, Defendant continued to call Plaintiff's cellular telephone unabated.

20. Defendant placed approximately thirty (30) calls to Plaintiff's cellular telephone after Plaintiff requested for the call to stop, which will be shown upon a thorough investigation

3

of Defendant's records and Plaintiff's carrier records.

21. Despite Plaintiff's repeated requests for Defendant to stop calling, Plaintiff continued to receive calls from telephone numbers belonging to Defendant.

22. Prior to calling Plaintiff's cellular telephone, Defendant knew the number was a cellular telephone number.

23. None of the calls Defendant made to Plaintiff were for an emergency purpose.

24. All of the calls were made by Defendant's employees or Defendant's authorized agents. Thus, all of the calls were made on behalf of Defendant.

25. All of the calls Defendant made to Plaintiff's cellular telephone resulted in Plaintiff incurring a charge for incoming calls.

26. During several conversations, Defendant learned that Plaintiff wanted Defendant to stop calling Plaintiff's cellular telephone.

27. Even if Plaintiff provided Defendant with her cellular telephone number, Defendant failed to provide Plaintiff with clear and conspicuous disclosure that Defendant would contact Plaintiff with an automatic telephone dialing system ("ATDS").

28. Even if at one point Defendant had prior express written consent to call Plaintiff's cellular telephone, Plaintiff revoked this consent as described above.

29. Within four (4) years of Plaintiff filing this Complaint, Defendant used an ATDS to call Plaintiff's cellular telephone.

30. When Plaintiff answered Defendant's calls, she was sometimes greeted with "dead air" whereby no person was on the other end of the line. After several seconds, an agent was connected to the automated call then greeted Plaintiff and sought to speak with Plaintiff attempting to solicit the purchase/renewal of a home warranty.

31. The telephone dialer system Defendant used to call Plaintiff's cellular telephone has the capacity to store telephone numbers.

32. The telephone dialer system Defendant used to call Plaintiff's cellular telephone has the capacity to call stored telephone numbers automatically.

33. The telephone dialer system Defendant used to call Plaintiff's cellular telephone has the capacity to call stored telephone numbers without human intervention.

34. The telephone dialer system Defendant used to call Plaintiff's cellular telephone has the capacity to call telephone numbers in sequential order.

35. The telephone dialer system Defendant used to call Plaintiff's cellular telephone has the capacity to call telephone numbers randomly.

36. The telephone dialer system Defendant used to call Plaintiff's cellular telephone selects telephone numbers to be called according to a protocol or strategy entered by Defendant.

37. The telephone dialer system Defendant used to call Plaintiff's cellular telephone dials numbers automatically from a list of numbers, with no human intervention involved at the time of dialing, and is an automatic telephone dialing system as defined by the Telephone Consumer Protection Act, 47 U.S.C. § 227(a)(1) and the Federal Communications Commission's (FCC's) 2003 Order regarding the TCPA. See In Re Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991, 18 F.C.C. Rcd. 14014, 14092 (2003); Ammons v. Ally Financial, Inc., No. 3:17-cv-00505, 2018 WL 3134619 (M.D. Tenn. June 27, 2018).

38. The telephone dialer system Defendant used to call Plaintiff's cellular telephone simultaneously calls multiple recipients.

39. Plaintiff will testify that she knew it was an autodialer because of the vast number of calls

she received and because she heard a pause when she answered her phone before a voice came on the line and/or she received prerecorded messages from Defendant.

40. The dead air that the Plaintiff may have experienced on the calls that she received is indicative of the use of an ATDS. This "dead air" is commonplace with autodialing and/or predictive dialing equipment. It indicates and evidences that the algorithm(s) being used by Defendant's autodialing equipment to predict when the live human agents are available for the next call has not been perfected and/or has not been recently refreshed or updated. Thus, resulting in the autodialer placing a call several seconds prior to the human agent's ability to end the current call he or she is on and be ready to accept the new connected call that the autodialer placed, without human intervention, to Plaintiff. The dead air is essentially the autodialer holding the calls it placed to Plaintiff until the next available human agent is ready to accept them. Should the calls at issue been manually dialed by a live human being, there would be no such dead air as the person dialing Plaintiff's cellular telephone would have been on the other end of the call the entire time and Plaintiff would have been immediately greeted by said person.

41. Defendant has numerous complaints against it across the country asserting that its automatic telephone dialing system continues to call despite being requested to stop.

42. Defendant has had numerous complaints against it from consumers across the country asking to not be called; however Defendant continues to call these individuals.

43. As a result of Defendant's alleged violations of law by placing these automated calls to Plaintiff's cellular telephone without prior express written consent, Defendant caused Plaintiff harm and/or injury such that Article III standing is satisfied in at least the following, if not more, ways:

   a. Invading Plaintiff's privacy;
   b. Electronically intruding upon Plaintiff's seclusion;
   c. Intrusion into Plaintiff's use and enjoyment of her cellular telephone;
   d. Embarrassment, stress, worry, frustration, anger and trespass to chattel (phone);
   e. Impermissibly occupying minutes, data, cell phone battery, availability to answer another call, and various other intangible rights that Plaintiff has as to complete ownership and use of her cellular telephone; and
   f. Causing Plaintiff to expend needless time in receiving, answering, and attempting to dispose of Defendant's unwanted calls.

## DEFENDANT VIOLATED THE TELEPHONE CONSUMER PROTECTION ACT

44. Defendant's conduct violated the TCPA by:

   a. Placing non-emergency telephone calls to Plaintiff's cellular telephone using an automatic telephone dialing system and/or pre-recorded or artificial voice in violation of 47 U.S.C. § 227 (b)(1)(A)(iii).

WHEREFORE, Plaintiff, REBECCA PRESTON, respectfully requests judgment be entered against Defendant, CHW GROUP, INC. d/b/a Choice Home Warranty, for the following:

45. As a result of Defendant's negligent violations of 47 U.S.C. § 227(b)(1), Plaintiff is entitled to and requests $500.00 in statutory damages, for each and every violation, pursuant to 47 U.S.C. § 227(b)(3)(B).

46. As a result of Defendant's willful and/or knowing violations of 47 U.S.C. § 227(b)(1), Plaintiff is entitled to and requests treble damages, as provided by statute, up to $1,500.00, for each and every violation, pursuant to 47 U.S.C. § 227(b)(3)(B) and 47 U.S.C. § 227(b)(3)(C).

47. Plaintiff is entitled to and seeks injunctive relief prohibiting such conduct in the future. Any other relief that this Honorable Court deems appropriate.

DATED: February 8, 2019 RESPECTFULLY SUBMITTED,

By: <u>*/s/* Sharon D. Cousineau</u>
Sharon D. Cousineau
Samwel Cousineau, PC
700 West Evergreen Blvd.
Vancouver, WA 98660
Tel. 360-750-3789
Fax 360-750-3788
sdcousineau@gmail.com

## CERTIFICATE OF SERVICE

I hereby certify that on the date set out below, I served the foregoing **PLAINTIFF'S FIRST AMENDED COMPLAINT** on:

Christopher A. Morehead
christopher.morehead@ogletree.com
OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.
222 S.W. Columbia Street, Suite 1500
Portland, OR 97201
*Attorney for Defendant*

A. Paul Heeringa
pheeringa@manatt.com
MANATT, PHELPS & PHILLIPS LLP
151 N. Franklin Street, Suite 2600
Chicago, IL 60606
*Attorney for Defendant*

☒ by **electronic** means through the Court's Case Management/Electronic Case File system, which will send automatic notification of filing to each person listed above.

☐ by **mailing** a true and correct copy to the last known address of each person listed. It was contained in a sealed envelope, with postage paid, addressed as stated above, and deposited with the U.S. Postal Service in Chicago, Illinois.

☐ by causing a true and correct copy to be **hand-delivered** to the last known address of each person listed. It was contained in a sealed envelope and addressed as stated above.

☐ by causing a true and correct copy to be delivered **via overnight courier** to the last known address of each person listed. It was contained in a sealed envelope, with courier fees paid, and addressed as stated above.

☐ by **emailing** a true and correct copy to the last known email address of each person listed, with confirmation of delivery.

Dated: February 8, 2019.

*/s/ Taylor L. Kosla*
_____
Taylor L. Kosla