Sharon D. Cousineau
Samwel Cousineau, PC
700 West Evergreen Blvd.
Vancouver, WA 98660
Tel. 360-750-3789
Fax 360-750-3788
sdcousineau@gmail.com

Taylor L. Kosla (admitted *pro hac vice)*
Agruss Law Firm, LLC
4809 N. Ravenswood Ave., Suite 419
Chicago, IL 60640
Tel. 312-224-4695
Fax 312-253-4451
taylor@agrusslawfirm.com

Attorneys for Plaintiff REBECCA PRESTON

## UNITED STATES DISTRICT COURT
## DISTRICT OF OREGON
## PORTLAND DIVISION

| | | |
|---|---|---|
| REBECCA PRESTON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 3:19-cv-48 |
| | ) | |
| CHW GROUP, INC. d/b/a CHOICE HOME WARRANTY, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

## PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT

NOW COMES Plaintiff, Rebecca Preston ("Plaintiff"), by and through her attorneys, and in response to Defendant's, CHW Group, Inc. d/b/a Choice Home Warranty ("Defendant"), Motion to Dismiss Plaintiff's First Amended Complaint ("Complaint") Pursuant to Fed. R. Civ. P. 12(b)(6), Fed. R. Civ. P. 12(b)(1) and Fed. R. Civ. P. 12(f), files the following response. For the

reasons illustrated in Plaintiff's response below, Plaintiff respectfully requests that the Court enter an Order denying Defendant's Motion to Dismiss in its entirety.

## FACTUAL BACKGROUND

This is an action for damages brought by a consumer against a home warranty corporation for engaging in conduct violative of the Telephone Consumer Protection Act, 47 U.S.C. § 227, et seq. ("TCPA"). In support of her claims that Defendant violated § 227 (b)(1)(A)(iii) of the TCPA, Plaintiff pleaded as follows in her complaint:

Within four (4) years of Plaintiff filing this Complaint, in or around January 2016 through January 2017, Plaintiff subscribed to a home warranty through Defendant. (Doc No. 9, ¶ 12); Within four (4) years of Plaintiff filing this Complaint, in or around December 2016, Defendant began placing calls to Plaintiff on Plaintiff's cellular telephone at xxx-xxx-6034, which included or introduced an advertisement or constituted telemarketing. (Doc No. 9, ¶ 13); Within four (4) years of Plaintiff filing this Complaint, in or around December 2016. Defendant called Plaintiff's cellular telephone from several telephone numbers, including, 732-379-5309 and 732-638-2688, which are two of Defendant's telephone numbers. (Doc No. 9, ¶ 14); Defendant placed telephone calls to Plaintiff for the purpose of encouraging the renewal of Defendant's home warranty services. (Doc No. 9, ¶ 15); On several occasions since Defendant began calling Plaintiff, Plaintiff answered Defendant's call, Plaintiff was met with an extended pause and was eventually connected to a live agent of Defendant. (Doc No. 9, ¶ 16); In speaking with Defendant's agents, Defendant's agents disclosed the call was from Choice Home Warranty. (Doc No. 9, ¶ 17); On several occasions since Defendant began calling Plaintiff, specifically, in or around January 2017, Plaintiff spoke with one of Defendant's agents and requested for the calls to stop. (Doc No. 9, ¶ 18); Despite Plaintiff's repeated request for Defendant to stop calling, Defendant continued to call Plaintiff's cellular telephone unabated. (Doc No. 9, ¶ 19); Defendant placed approximately thirty (30) calls to Plaintiff's cellular telephone after Plaintiff requested for the call to stop, which will be shown upon a thorough investigation of Defendant's records and Plaintiff's carrier records. (Doc No. 9, ¶ 20); Despite Plaintiff's repeated requests for Defendant to stop calling, Plaintiff continued to receive calls from telephone numbers belonging to Defendant. (Doc No. 9, ¶ 21); Prior to calling Plaintiff's cellular telephone, Defendant knew the number was a cellular telephone number. (Doc No. 9, ¶ 22); None of the calls Defendant made to Plaintiff were for an emergency purpose. (Doc No. 9, ¶ 23); All of the calls were made by Defendant's employees or Defendant's authorized agents. Thus, all of the calls were made on behalf of Defendant. (Doc No. 9, ¶ 24); All of the calls Defendant made to Plaintiff's cellular telephone resulted in Plaintiff incurring a charge for incoming calls. (Doc No. 9, ¶ 25); During several conversations, Defendant learned that

Plaintiff wanted Defendant to stop calling Plaintiff's cellular telephone. (Doc No. 9, ¶ 26); Even if Plaintiff provided Defendant with her cellular telephone number, Defendant failed to provide Plaintiff with clear and conspicuous disclosure that Defendant would contact Plaintiff with an automatic telephone dialing system ("ATDS"). (Doc No. 9, ¶ 27); Even if at one point Defendant had prior express written consent to call Plaintiff's cellular telephone, Plaintiff revoked this consent as described above. (Doc No. 9, ¶ 28); Within four (4) years of Plaintiff filing this Complaint, Defendant used an ATDS to call Plaintiff's cellular telephone. (Doc No. 9, ¶ 29); When Plaintiff answered Defendant's calls, she was sometimes greeted with "dead air" whereby no person was on the other end of the line. After several seconds, an agent was connected to the automated call then greeted Plaintiff and sought to speak with Plaintiff attempting to solicit the purchase/renewal of a home warranty. (Doc No. 9, ¶ 30); The telephone dialer system Defendant used to call Plaintiff's cellular telephone has the capacity to store telephone numbers. (Doc No. 9, ¶ 31); The telephone dialer system Defendant used to call Plaintiff's cellular telephone has the capacity to call stored telephone numbers automatically. (Doc No. 9, ¶ 32); The telephone dialer system Defendant used to call Plaintiff's cellular telephone has the capacity to call stored telephone numbers without human intervention. (Doc No. 9, ¶ 33); The telephone dialer system Defendant used to call Plaintiff's cellular telephone has the capacity to call telephone numbers in sequential order. (Doc No. 9, ¶ 34); The telephone dialer system Defendant used to call Plaintiff's cellular telephone has the capacity to call telephone numbers randomly. (Doc No. 9, ¶ 35); The telephone dialer system Defendant used to call Plaintiff's cellular telephone selects telephone numbers to be called according to a protocol or strategy entered by Defendant. (Doc No. 9, ¶ 36); The telephone dialer system Defendant used to call Plaintiff's cellular telephone dials numbers automatically from a list of numbers, with no human intervention involved at the time of dialing, and is an automatic telephone dialing system as defined by the Telephone Consumer Protection Act, 47 U.S.C. § 227(a)(1) and the Federal Communications Commission's (FCC's) 2003 Order regarding the TCPA. See In Re Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991, 18 F.C.C. Rcd. 14014, 14092 (2003); Ammons v. Ally Financial, Inc., No. 3:17-cv-00505, 2018 WL 3134619 (M.D. Tenn. June 27, 2018). (Doc No. 9, ¶ 37); The telephone dialer system Defendant used to call Plaintiff's cellular telephone simultaneously calls multiple recipients. (Doc No. 9, ¶ 38); Plaintiff will testify that she knew it was an autodialer because of the vast number of calls she received and because she heard a pause when she answered her phone before a voice came on the line and/or she received prerecorded messages from Defendant. (Doc No. 9, ¶ 39); The dead air that the Plaintiff may have experienced on the calls that she received is indicative of the use of an ATDS. This "dead air" is commonplace with autodialing and/or predictive dialing equipment. It indicates and evidences that the algorithm(s) being used by Defendant's autodialing equipment to predict when the live human agents are available for the next call has not been perfected and/or has not been recently refreshed or updated. Thus, resulting in the autodialer placing a call several seconds prior to the human agent's ability to end the current call he or she is on and be ready to accept the new connected call that the autodialer placed,

without human intervention, to Plaintiff. The dead air is essentially the autodialer holding the calls it placed to Plaintiff until the next available human agent is ready to accept them. Should the calls at issue been manually dialed by a live human being, there would be no such dead air as the person dialing Plaintiff's cellular telephone would have been on the other end of the call the entire time and Plaintiff would have been immediately greeted by said person. (Doc No. 9, ¶ 40); Defendant has numerous complaints against it across the country asserting that its automatic telephone dialing system continues to call despite being requested to stop. (Doc No. 9, ¶ 41); Defendant has had numerous complaints against it from consumers across the country asking to not be called; however Defendant continues to call these individuals. (Doc No. 9, ¶ 42); As a result of Defendant's alleged violations of law by placing these automated calls to Plaintiff's cellular telephone without prior express written consent, Defendant caused Plaintiff harm and/or injury such that Article III standing is satisfied in at least the following, if not more, ways: (a)Invading Plaintiff's privacy; (b) Electronically intruding upon Plaintiff's seclusion; (c) Intrusion into Plaintiff's use and enjoyment of her cellular telephone;(d) Embarrassment, stress, worry, frustration, anger and trespass to chattel (phone); (e) Impermissibly occupying minutes, data, cell phone battery, availability to answer another call, and various other intangible rights that Plaintiff has as to complete ownership and use of her cellular telephone; and (f) Causing Plaintiff to expend needless time in receiving, answering, and attempting to dispose of Defendant's unwanted calls. (Doc No. 9, ¶ 43).

As a result of this alleged conduct, Plaintiff then alleged the following in her complaint with regard to violations of the TCPA:

Placing non-emergency telephone calls to Plaintiff's cellular telephone using an automatic telephone dialing system and/or pre-recorded or artificial voice in violation of 47 U.S.C. § 227 (b)(1)(A)(iii). (Doc No. 9, ¶ 44).

## ARGUMENT AND AUTHORITIES

### I.   PLAINTIFF'S COMPLAINT SUFFICIENTLY ALLEGES THAT DEFENDANT HAS VIOLATED THE TCPA

#### a.   *Standard for Dismissal Under Rule 12(b)(6)*

"To survive a motion to dismiss, complaint must contain sufficient factual matter, accepted as true to 'state a claim to relief that is plausible on its fact.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). In evaluating a Rule 12(b)(6) motion, the court should assume all facts alleged in the complaint are true, and construe the complaint in the light most favorable to the plaintiff. *Barron*

4

*v. Reich*, 13 F.3d 1370, 1374 (9th Cir. 1994) (citing *Klarfeld v. United States,* 944 F.2d 583, 585 (9th Cir. 1991)). "The issue on a motion to dismiss for failure to state a claim is not whether the claimant will ultimately prevail, but whether the claimant is entitled to offer evidence to support the claims asserted." *Films of Distinction, Inc. v. Allegro Film Productions, Inc.,* 12 F. Supp. 2d 1068, 1073 (C.D. Cal. 1998) (citing *Gilligan v. Jamco Dev. Corp.,* 108 F. 3d 246, 249 (9th Cir. 1997)).

### b.    *Elements of a TCPA Claim*

Despite Defendant's strident arguments to the contrary, courts in this circuit, have recognized that Plaintiff need only—as she clearly has—allege facts regarding three elements to make out her TCPA claim: "[t]he three elements of a TCPA claim are: (1) the defendant called a cellular telephone number; (2) using an automatic telephone dialing system; (3) without the recipient's prior express consent." *Brown v. Collections Bureau of Am., Ltd*, 183 F. Supp. 3d 1004, 1005 (N.D. Cal. 2016) (citing *Meyer v. Portfolio Recovery Associates, LLC*, 707 F.3d 1036, 1043 (9th Cir. 2012)).

### c.    *NOT Elements of a TCPA Claim*

Moreover, as far as the purported additional elements that Defendant insists must be pleaded: A TCPA complaint need not allege "details at the pleading stage of about the time and context of every text message." *Kramer v. Autobytel, Inc.*, 759 F. Supp. 2d 1165, 1172 (N.D. Cal. 2010). Similarly, in this matter, Plaintiff is not required to allege the exact dates and times of the calls in order to put Defendant on notice of her TCPA claims. It is not necessary to plead a plaintiff's complete telephone number—or even any part of the telephone number. *Ott v. Mortg. Inv'rs Corp. of Ohio, Inc.*, 65 F. Supp. 3d 1046, 1059 (D. Or. 2014) (citing *Crawford v. Target Corp.,* No. 3:14–CV–0090–B, 2014 WL 5847490, at *3–4 (N.D. Tex. Nov. 10, 2014)). A plaintiff

need not plead details regarding defendant's operations and equipment to survive dismissal under Rule 12(b)(6). *Id*. Rather, a plaintiff "must proffer factual allegations that support a reasonable inference that an ATDS was used." *Id*. "The issue is whether the allegations of the complaint, taken as a whole and including the nature of the communication, give rise to a plausible belief that the message was sent using an ATDS." *Robbins v. Coca–Cola Co.,* 2013 WL 2252646 at *3 (S.D. Cal. May 22, 2013). "While additional factual details about the machines might be helpful, further facts are not required to move beyond the pleading stage. It is possible that further litigation will determine that no ATDS was used, but the complaint has pleaded enough facts "to raise a right to relief above the speculative level." *In re Jiffy Lube Int'l, Inc., Text Spam Litig.*, 847 F. Supp. 2d 1253, 1260 (S.D. Cal. 2012) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Plaintiff does not even need to allege that the calls were made without her consent—because consent is an affirmative defense to be raised and proven by a defendant. *Robbins,* 2013 WL 2252646 at *2 (citing *Connelly v. Hilton Grant Vacations Co., LLC,* 2012 WL 2129364 at *3 (S.D. Cal. June 11, 2012)).

    **d.**    ***Plaintiff Clearly Alleged Sufficient Facts in Her Complaint***

In light of the foregoing discussion of what <u>is</u> and what is <u>not</u> a TCPA element, and the facts pleaded by Plaintiff in her Complaint, Defendant's Motion should be denied. Defendant cites *Twombly* in its brief yet fails to acknowledge that *Twombly* requires only "enough fact to raise a reasonable expectation that discovery will reveal evidence" needed to prove the claim. *Bell Atl. Corp.*, 550 U.S. 544 556. And "[a]sking for plausible grounds . . . does not impose a probability requirement at the pleading stage." *Id.* "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable

for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Instead, Defendant disingenuously suggests that Plaintiff must prove her case in her Complaint.

Plaintiff plainly alleges that "Defendant called Plaintiff's cellular from several telephone numbers, including 732-379-5309 and 732-638-2688, which are two of Defendant's telephone numbers." (Doc No. 9, ¶ 14). The Complaint directly alleges that Defendant's employees took part in the alleged TCPA violations. Plaintiff sets forth detailed allegations about her communications with Defendant's agents and, specifically, her efforts to have the calls stop. (Doc No. 9, ¶¶ 15–19). Given the foregoing, Plaintiff undoubtedly set forth sufficient allegations that Defendant made the calls at issue.

By demanding that Plaintiff plead that Defendant ***physically*** initiated the calls at issue, Defendant is "essentially urg[ing for a heightened pleading standard upon" TCPA plaintiffs. *Skaff v. Meridien N.A. Beverly Hills, LLC*, 506 F.3d 832, 841 (9th Cir. 2007). Even after *Twombly*, "the Supreme Court has repeatedly instructed [courts] not to impose such heightened standards in the absence of an explicit requirement in a statute or federal rule." *Id.* The purpose of the pleading requirements under Federal Rule of Civil Procedure 8 is to "give the defendant fair notice of the factual basis of the claim." *Id.* Plaintiff has given Defendant notice of the factual basis of her claims.

Defendant also suggests that Plaintiff must show that Defendant *itself* dialed Plaintiff's telephone number. This argument reflects unsound understanding about the nature of corporate liability. Defendant itself did not and could not call Plaintiff. Defendant is a legal person—it has not physical body to accomplish such an action. "Corporate entities . . . can only act through their agents." *United States ex rel. Rosales v. San Francisco Housing Authority*, 173 F. Supp. 2d 987, 1003 (N.D. Cal. 2001) (citing *Protectus Alpha Nav. Co., Ltd. v. North Pacific Grain Growers,*

*Inc.*, 767 F.2d 1379, 1386 (9th Cir. 1985) ("a corporation can act only through its agents and employees")).

      **e.**     ***Defendant's Additional Misstatements of the TCPA***

      In its Motion, Defendant disingenuously claims that Plaintiff's acknowledgement of speaking to a live agent somehow negates that the calls were made using an ATDS or artificial voice or prerecorded voice. (Doc. No. 21 at 23). Plaintiff plainly alleges that the calls were made using an ATDS and she was greeted by dead air (indicative of the use of an ATDS) ***before*** Plaintiff was able to speak to a live person. Moreover, Defendant impermissibly invites the Court to weigh the facts of Plaintiff's complaint. Indeed, resolving "disputed questions of fact are anathema to Rule 12(b)(6) jurisprudence." *Smith v. Reg'l Transit Auth.*, 756 F.3d 340, 347 (5th Cir. 2014).

      Plaintiff pleaded facts alleging the calls were made with an artificial or pre-recorded voice or using an ATDS. The allegations set forth in the complaint of Defendant's use of ATDS are substantially similar to the allegations in several cases where courts have denied a defendant's 12(b)(6) motion to dismiss on this very issue. *See Robinson v. Midland Funding, LLC*, 2011 WL 1434919 (S.D. Cal. Apr. 13, 2011) (complaint included allegation that calls were made to the plaintiff's cellular telephone via ATDS using artificial or prerecorded voice, resulting in a charge to plaintiff for the calls); *Reyes v. Saxon Mortg. Services, Inc.*, 2009 WL 3738177 (S.D. Cal. Nov. 5, 2009) (complaint alleged defendant made frequent calls to the plaintiff's cell phone using ATDS employing an artificial or prerecorded voice, resulting in a charge to plaintiff for the calls).

      Similarly to *Robinson* and *Reyes*, Plaintiff alleges "Defendant used an ATDS to call Plaintiff's cellular telephone" and Defendant violated the TCPA by using an ATDS and/or pre-recorded or artificial voice. (Doc No. 9, ¶¶ 29 and 44). Further, Plaintiff alleges that when she answered Defendant's calls, she was sometimes greeted with dead air for several seconds before

Defendant's employee or agent was connected to the automated call. (Doc No. 9, ¶ 30). Dead air is indicative of the use of an ATDS as it is the time whereby the autodialer is holding the call placed to Plaintiff until the next available human agent is ready to accept the call. (Doc No. 9, ¶ 40). Under the TCPA and Federal Communications Commission's (FCC's) 2003 Order regarding the TCPA, an ATDS dials numbers automatically from a list of numbers, with no human intervention involved at the time of dialing. (Doc No. 9, ¶ 37); *See In Re Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 18 F.C.C. Rcd. 14014, 14092 (2003); *Ammons v. Ally Financial, Inc.*, No. 3:17-cv-00505, 2018 WL 3134619 (M.D. Tenn. June 27, 2018). Additionally, Plaintiff also sets forth allegations that she was sometimes greeted with a pre-recorded message. (Doc No. 9, ¶ 39). It is blatantly clear that Plaintiff alleges the calls were made with an artificial or pre-recorded voice or using an ATDS.

      **f.**    *Vicarious Liability*

Defendant's vicarious liability argument, (Doc. No. 21 at 27–30), is nothing but a hodgepodge of affirmative defenses that have no place in a Motion to Dismiss and should be disregarded and denied for that reason alone. Defendant's vicarious liability argument appears to be a blend of, at least, the affirmative defenses of intervening/superseding cause of third-parties and whether liability flows from a principal-agent relationship.

Even if the Court does entertain Defendant's argument that "Plaintiff Has Not Plead Sufficient Facts Demonstrating Vicarious TCPA Liability", it is clearly baseless. In the complaint, Plaintiff alleges that "all the calls were made on behalf of Defendant." (Doc No. 9, ¶ 24). As mentioned above, Plaintiff also alleges the telephone numbers Plaintiff received calls from belong to the Defendant. (Doc No. 9, ¶ 13). Thus, Plaintiff alleges Defendant itself placed the calls at issue. However, should it be shown in discovery, as *Twombly* permits, that a third-party placed the

calls at issue, only then do Defendant's vicarious-liability based affirmative defenses arguably become relevant. Even so, a defendant "can be held liable under the TCPA even if it hired another entity to [make the calls at issue.]" *In re Jiffy Lube Intern., Inc., Text Spam Litig.*, 847 F. Supp. 2d 1253, 1255 (S.D. Cal. 2012). The simple allegation that "Defendants and their agents directed the mass transmission of wireless spam to the cell phones nationwide" is enough, even though it recognized "the complaint [did] not provide specifics about how much control [Defendants] possessed or how much information [they] had." *Id* at 1258 (citing *Kramer v. Autobytel, Inc.*, 759 F. Supp. 2d 1165, 1170 (N.D. Cal. 2010)). Again, there is no requirement that a consumer must provide proof of vicarious liability at the time she files her complaint. *See In re Dish Network*, 28 FCC Rcd. at 6584 ¶ 28.

## II.    THE COURT HAS SUBJECT MATTER JURISDICTION OVER THE INSTANT MATTER

### a.    *Standard for Dismissal Under Rule 12(b)(1)*

"On a motion to dismiss under Federal Rule of Civil Procedure 12(b)(1), the applicable standard turns on the nature of the jurisdictional challenge." *Moore v. Grundmann*, 2013 U.S. Dist. LEXIS 71288, *6 (S.D. Cal. May 20, 2013). A motion to dismiss under Rule 12(b)(1) may present either a facial or factual challenge. *Thornhill Publishing Co. v. General Telephone & Electronics Corp.*, 594 F.2d 730, 733 (9th Cir. 1979). "If a defendant brings a facial attack, arguing that the allegations in the complaint are insufficient to attain jurisdiction, the Court's inquiry is the same as when ruling on a motion to dismiss under Rule 12(b)(6)." *Organization for Advancement of Minorities with Disabilities v. Brick Oven Restaurant*, 406 F. Supp. 2d 1120, 1124 (S.D. Cal. 2005).

b.      *Plaintiff has Article III Standing*

Defendant's request for dismissal pursuant to 12(b)(1) should be denied as Defendant merely regurgitates the same arguments from its 12(b)(6) motion to dismiss. Defendant contends that Plaintiff lacks standing because she has failed to allege either the causation or redressability arguments. (Doc No. 21 at 31). Notably, Defendant does not argue that that Plaintiff has not suffered an injury in fact.

The basic requirements of standing are "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant; and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016), *as revised* (May 24, 2016) (citing *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992)). For the subsequent reasons spelled out below, it is clear that Defendant's violations of the TCPA are traceable to its conduct, and that the violations are redressable by statutory damages.

In *Hossfeld v. Compass Bank*, the court was faced with a case similar to the instant matter where a consumer brought a case under the TCPA for receipt of automated telephone calls after the consumer requested for the calls to stop. *Hossfeld v. Compass Bank*, 2:16-CV-2017-VEH, 2017 WL 5068752, at *4 (N.D. Ala. Nov. 3, 2017). The court held that injury is fairly traceable to a TCPA violation where the plaintiff's cell phone number was the direct source that led to his claimed injury. *Id.* at *13–14 (citing *Ung v. Universal Acceptance Corp.*, 198 F. Supp. 3d 1036, 1040 (D. Minn. 2016) ("In order to show traceability, Ung must show only that Universal's calls were the source of his harm")); *id.* ("It is readily apparent that the only harm alleged in this case resulted from Universal's conduct, and not from the actions of any third parties").

As explained above, Plaintiff alleges that Defendant itself "called Plaintiff's cellular from several telephone numbers, including, 732-379-5309 and 732-638-2688, which are two of Defendant's telephone numbers". (Doc No. 9, ¶ 14). Plaintiff further sets forth detailed allegations about her communications with Defendant's agents and, specifically, her efforts to have the calls stop. (Doc No. 9, ¶ 15-19). Plaintiff alleges that "In speaking with Defendant's agents, Defendant's agents disclosed the call was from Choice Home Warranty". (Doc No. 9 ¶ 17). Thus, Plaintiff easily satisfies the Article III requirement that the alleged injury be traceable to Defendant's conduct.

## III.    MATERIAL FROM PLAINTIFF'S FIRST AMENDED COMPLAINT SHOULD NOT BE STRICKEN

Finally, Defendant argues that the Court should strike certain allegations from the Complaint – specifically, where Plaintiff brings to light the countless lawsuits consumers have brought against Defendant for violations of the TCPA. (Doc No. 21 at 33). A simple search on PACER reveals the plethora of lawsuits filed against Defendant within the past year alone – showing it is the policy, practice and procedure of Defendant to bombard consumers with automated calls. This is the crux of the instant matter. Plaintiff's allegations are proper because "[A] court may take judicial notice of matters that are of public record, including pleadings that have been filed in a federal or state court." *In re Am. Intern. Refinery*, 402 B.R. 728, 749 (Bankr. W.D. La. 2008).

Therefore, no allegations should be stricken from Plaintiff's complaint.

## IV.    DEFENDANT'S PERSONAL ATTACKS ON PLAINTIFF'S COUNSEL AND RELATED FOOTNOTE ARGUMENT SHOULD BE DISREGARDED BY THE COURT

Defendant spends considerable time and space, including a large footnote, in its Motion engaging in personal attacks on Plaintiff's counsel. (Doc. No. 21 at 13, 16, 26 and 33). Defendant's

unprofessional tactic is improper, irrelevant, and should be ignored by the Court. Moreover, Defendant's strange obsession with other cases Plaintiff's counsel has filed is confusing and disingenuous. Does Defendant really believe that it is odd that a consumer-rights attorney would file numerous TCPA cases? Does Defendant really believe that it is odd that TCPA complaints would look very similar? As explained at length *supra*, a TCPA case only consists of three elements. TCPA cases involve robocalls, naturally the factual material is going to be similar. Not only are Defendant's personal attacks on Plaintiff's counsel improper—the substance of the attacks is a red herring. It is also ironic that Defendant attempts to somehow discredit Plaintiff's counsel for filing "cookie cutter" pleadings. The above-referenced footnote is clearly a "cookie cutter" copy-and-paste from motions Defendant filed in other cases against it handled by Plaintiff's counsel.

Additionally, footnotes are not the place to introduce an argument and any argument raised in a footnote is waived. "[P]lacing an argument in a footnote can create more than simple credibility problems. A number of federal and state courts have held that perfunctorily making an argument in a footnote causes a waiver. *E.g., Smithkline Beecham Corp. v. Apotex Corp.*, 439 F.3d 1312, 1320 (Fed. Cir. 2006) ("[A]rguments raised in footnotes are not preserved."); *Sugarcane Growers Coop. of Florida v. Veneman*, 289 F.3d 89, 93 n.3 (D.C. Cir. 2002) ("appellants failed to raise their Regulatory Flexibility Act claim—a footnote at the end of their opening brief does not suffice."); *Bakalis v. Golembeski*, 35 F.3d 318, 326 n.8 (7th Cir. 1994) (argument "made only in a footnote in the opening brief" and "not fully developed until the reply brief … is deemed waived"); *People v. Crosswhite*, 124 Cal. Rptr. 2d 301, 306 n.5 (Cal. Ct. App. 2001) ("This argument is waived by raising it only in a footnote under an argument heading which gives no notice of the contention."); *Roberts v. Worcester Redev. Auth.*, 759 N.E.2d 1220, 1227 n.11 (Mass. App. Ct.

2001) ("We are not required to address an argument raised in a footnote."). Thus, the lawyer not only can lose credibility through incorrectly used footnotes but can lose an important argument by placing it in one. Therefore, Defendant's argument relating to other cases handled by Plaintiff's counsel should be deemed waived.

Accordingly, Defendant's personal attacks against Plaintiff's counsel and the footnote arguments should be ignored by the Court.

## V.   CONCLUSION

This Court should see Defendant's motion to dismiss for what it truly is – a desperate attempt to be freed from the law it has, and continues, to violate.

WHEREFORE, in light of all of the foregoing, Plaintiff respectfully requests that this Honorable Court deny Defendant's Motion to Dismiss Pursuant to Rules 12(b)(6) and 12(b)(1). Alternatively, if necessary, Plaintiff requests that this Honorable permission to file a Second Amended Complaint.


DATED: March 22, 2019                    RESPECTFULLY SUBMITTED,


By:   */s/* Sharon D. Cousineau          /s/ Taylor L. Kosla
      Sharon D. Cousineau                Taylor L. Kosla (admitted Pro Hac Vice)
      Samwel Cousineau, PC               Agruss Law Firm, LLC
      700 West Evergreen Blvd.           4809 N. Ravenswood Ave., Suite 419
      Vancouver, WA 98660                Chicago, IL 60640
      Tel. 360-750-3789                  Tel. 312-224-4695
      Fax 360-750-3788                   Fax. 312-253-4451
      sdcousineau@gmail.com              taylor@agrusslawfirm.com

      Attorneys for Plaintiff
      REBECCA PRESTON

<u>**CERTIFICATE OF SERVICE**</u>

I, Taylor Kosla, state the following:

I am employed in Chicago, Illinois. I am over the age of 18, and am not a party to this action. My business address is 4809 N. Ravenswood Ave., Suite 419, Chicago, Illinois 60640. On March 22, 2019, I served the following documents:

**PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT**

On the parties listed below:

Christopher A. Morehead
OGLETREE, DEAKINS, NASH,
SMOAK & STEWART, P.C.
222 S.W. Columbia Street, Suite 1500
Portland, OR 97201
Telephone: (503-552-2146
Email: Christopher.morehead@ogletree.com

A. Paul Heeringa
MANATT, PHELPS & PHILLIPS LLP
151 N. Franklin, Suite 2600
Chicago, IL 60606
Telephone: (312) 529-6308
Email: pheeringa@manatt.com

By the following means of service:

[X]    **BY ELECTRONIC MAIL:** I transmitted the document(s) listed above electronically to the e-mail address(es) listed above, which are the e-mail address(es) on file with the court's CM/ECF system. I am readily familiar with the firm's Microsoft Outlook e-mail system, and the transmission was reported as complete, without error.

[X]    **FEDERAL:** I declare under penalty of perjury under the laws of Illinois that the above is true and correct.

Executed on March 22, 2019.

By: /s/ Taylor Kosla_____
         Taylor Kosla